FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Sep 04, 2018

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| KENNETH R., | No. 1:17-cv-03161-MKD |
| Plaintiff, | ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| vs. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | ECF Nos. 15, 16 |

BEFORE THE COURT are the parties' cross-motions for summary judgment. ECF Nos. 15, 16. The parties consented to proceed before a magistrate judge. ECF No. 7. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, the Court denies Plaintiff's Motion, ECF No. 15, and grants Defendant's Motion, ECF No. 16.

ORDER - 1

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g); 1383(c)(3).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674

F.3d 1104, 1111 (9th Cir. 2012).  Further, a district court "may not reverse an

ALJ's decision on account of an error that is harmless."  *Id.*  An error is harmless

"where it is inconsequential to the [ALJ's] ultimate nondisability determination."

*Id*. at 1115 (quotation and citation omitted).  The party appealing the ALJ's

decision generally bears the burden of establishing that it was harmed.  *Shinseki v.*

*Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within

the meaning of the Social Security Act.  First, the claimant must be "unable to

engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which

has lasted or can be expected to last for a continuous period of not less than twelve

months."  42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A).  Second, the claimant's

impairment must be "of such severity that [she] is not only unable to do [her]

previous work[,] but cannot, considering [her] age, education, and work

experience, engage in any other kind of substantial gainful work which exists in

the national economy."  42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to

determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. §§

404.1520(a)(4)(i)-(v); 416.920(a)(4)(i)-(v).  At step one, the Commissioner

considers the claimant's work activity.  20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(b); 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. §§ 404.1520(c); 416.920(c).  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(c); 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. §§ 404.1520(d); 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(f); 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the

Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1); 416.920(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. §§ 404.1520(g)(1); 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c)(2); 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

Plaintiff applied for disability insurance benefits and supplemental security income benefits on July 8, 2013, alleging an amended closed period of disability between September 30, 2010 and April 1, 2014. Tr. 218-26, 240-45, 43. Benefits were denied initially, Tr. 87-88, and upon reconsideration. Tr. 148-58. Plaintiff appeared for a hearing before an administrative law judge (ALJ) on July 13, 2015. Tr. 38-86. On March 23, 2016, the ALJ denied Plaintiff's applications. Tr. 17-37.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity from September 30, 2010 through April 1, 2014. Tr. 22. However, as of April 2, 2014, the ALJ found Plaintiff was engaged in substantial gainful activity

and was not disabled.  Tr. 22.  At step two, the ALJ found Plaintiff has the

following severe impairments: spinal disorders, carpal tunnel syndrome, and

obesity.  Tr. 23.  At step three, the ALJ found that Plaintiff does not have an

impairment or combination of impairments that meets or medically equals the

severity of a listed impairment.  Tr. 26.  The ALJ then concluded that Plaintiff has

the RFC to perform light work with the following additional limitations:

> The claimant could frequently climb ramps and stairs.  He could
> occasionally climb ladders, ropes, and scaffolds. The claimant could
> occasionally stoop, kneel, crouch, and crawl.  He could do frequent bilateral
> handling, fingering, and feeling.  The claimant should avoid concentrated
> exposure to hazards such as dangerous machinery; unprotected heights, etc.;
> fumes, odors, dust, gases, and poor ventilation; and vibration.

Tr. 27.

At step four, the ALJ found Plaintiff was able to perform past relevant work

as a fast food manager and pamphlet distributor.  Tr. 31.  Alternatively, the ALJ

found that considering Plaintiff's age, education, work experience, and RFC, there

are other jobs that exist in significant numbers in the national economy that the

Plaintiff can perform such as fast food worker, cashier II, and housekeeper.  Tr. 32.

The ALJ concluded Plaintiff has not been under a disability, as defined in the

Social Security Act, from September 30, 2010 through the date of the decision.  Tr.

32.

On July 17, 2017, the Appeals Council denied review, Tr. 1-6, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *See* 42 U.S.C. § 1383(c)(3); 20 C.F.R. §§ 416.1481, 422.210.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying him disability insurance benefits under Title II and supplemental security income benefits under Title XVI of the Social Security Act. ECF No. 15. Plaintiff raises the following issues for this Court's review:

1. Whether the ALJ properly evaluated the medical opinion evidence;

2. Whether the ALJ properly considered the lay witness statements;

3. Whether the ALJ properly weighed Plaintiff's symptom claims; and

4. Whether the ALJ properly assessed Plaintiff's past relevant work at step four.

*See* ECF No. 15 at 3-4.

## DISCUSSION

### A. Medical Opinion Evidence

Plaintiff contends the ALJ improperly weighed the medical opinion evidence of examining physician, William Drenguis, M.D. ECF No. 15 at 5-9.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant

ORDER - 8

but who review the claimant's file (nonexamining or reviewing physicians)." *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (brackets omitted). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Id*. "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id*. (citations omitted).

If a treating or examining physician's opinion is uncontradicted, an ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r Soc. Sec. Admin*., 554 F.3d 1219, 1228 (9th Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995)).

In October 2013, Dr. Drenguis performed a consultative examination of Plaintiff. Tr. 348-53. Dr. Drenguis diagnosed lumbar degenerative joint disease; bilateral carpal tunnel syndrome, right greater than left; gout with findings of inflammation in his left ankle today; history of right knee instability with minimal findings on physical examination; coronary artery disease stats post coronary artery bypass grafting; obesity; and bilateral degenerative joint disease of the hips. Tr. 352. Functionally, Dr. Drenguis opined Plaintiff's maximum standing and walking capacity was about four hours in an eight-hour workday; maximum sitting capacity was four hours in an eight-hour workday; maximum lifting/carrying capacity was 20 pounds occasionally and 10 pounds frequently; and though he had no limitations in reaching, he could only occasionally (versus frequently, as found by the ALJ) handle, finger, and feel.[1] Tr. 352-53. The vocational expert testified that no jobs would be available to Plaintiff at the light or sedentary exertional level if he were limited to occasional (versus frequent) handling and fingering. Tr. 80.

---

[1] Dr. Drenguis' report did not offer a definition of "occasional." However, as defined by the Social Security Rulings, "occasional" means "from very little to up to one-third of the time," where "frequent" means occurring "from one-third to two-thirds of the time." SSR 83–10, 1983 WL 31251, at *5, 6.

The ALJ gave partial weight to Dr. Drenguis' opinion, rejecting the assessed exertional and manipulative limitations.  Tr. 30-31.  Because these limitations were contradicted by nonexamining state agency physicians, Norman Staley M.D., Tr. 118-19, and Guillermo Rubio, M.D., Tr. 95-96, the ALJ was required to provide specific and legitimate reasons for rejecting these opinions.  *Bayliss*, 427 F.3d at 1216.

*1. Manipulative Limitations*

Plaintiff argues the ALJ failed to give sufficient reasons for rejecting Dr. Drenguis' opinion that Plaintiff was limited to occasional handling, fingering and feeling in his hands.

a.    Inconsistent Examination Findings

First, the ALJ noted Dr. Drenguis' opinion regarding manipulative limitations "does not seem entirely consistent" with his examination findings that Plaintiff had a normal grip and no difficulty turning a doorknob, tying a pair of shoes, manipulating a button, and picking up a coin with either hand.[2]  Tr. 31.  An

_____

[2] The "not entirely consistent" language utilized throughout the ALJ's decision is a boilerplate conclusion that many courts have criticized as "not entirely" fails to inform as to what evidence the ALJ considered inconsistent.  *See Dejohnette v. Berryhill*, 2018 WL 521589 (N.D. Ill. Jan. 22, 2018) (citing *Parker v. Astrue*, 597

ALJ may reject opinions that are internally inconsistent. *Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir. 1996). An ALJ is not obliged to credit medical opinions that are unsupported by the medical source's own data. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Plaintiff contends the ability to perform activities once on examination is not inconsistent with Dr. Drenguis' opinion that Plaintiff can only perform manipulative activities up to one-third of the workday. ECF No. 15 at 7. Plaintiff's alternative view of the evidence does not establish error in the ALJ's decision, however. A reviewing court's role is not to determine whether the record can support the claimant's alternative view of the evidence, but whether substantial evidence supports the ALJ's conclusions. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld."). The ALJ did not error in concluding the normal physical examination findings did not corroborate the more extreme manipulative limitations assessment. This was a specific and

---

F.3d 920 (7th Cir. 2010)). Nevertheless, the use of this boilerplate language does not necessarily undermine the ALJ's decision if substantial evidence supports the conclusion. Given the ALJ's more specific analysis, the ALJ's inclusion of this boilerplate does not affect the Court's review.

ORDER - 12

legitimate reason supported by substantial evidence for giving less weight to the opinion.

b. Inconsistent Medical Evidence

Second, the ALJ found Dr. Drenguis' opinion was "not entirely consistent with the overall treatment record," "inconsistencies" which Dr. Drenguis was not aware of because "he did not review the overall record." Tr. 31. An ALJ may reject limitations "unsupported by the record as a whole." *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2003). The specific and legitimate reason standard can be met by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, [the ALJ] stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998); *Embrey v. Bowen*, 849 F.2d 418, 421–22 (9th Cir. 1988) (conclusory reasons do not "achieve the level of specificity" required to justify an ALJ's rejection of an opinion); *McAllister v. Sullivan*, 888 F.2d 599, 602 (9th Cir. 1989) (an ALJ's rejection of a physician's opinion on the ground that it was contrary to clinical findings in the record was "broad and vague, failing to specify why the ALJ felt the treating physician's opinion was flawed").

The ALJ's explanation of the medical evidence acknowledged that "[s]ome clinical findings have been positive, while others have been normal." Tr. 29. The ALJ detailed some of the both the positive and negative findings. *Id*. The ALJ

acknowledged the 2014 electrodiagnostic report, finding "severe bilateral median nerve compromise affecting the sensory and motor components," supporting the diagnosis of carpal tunnel syndrome.  Tr. 29 (citing Tr. 388).  Evidence showed Plaintiff experienced "notable symptoms" in his hands, for which a surgical release was anticipated (but had not occurred).  Tr. 29 (citing Tr. 462) (Sept. 2014: orthopedic treatment note indicating surgical release of the carpal tunnel is "the most definitive treatment"); *see also* Tr. 444 ("He states the reason that he has not had [the surgery is] because he does not feel like he can really afford it currently.").  Additionally, the ALJ noted that while Dr. Drenguis found Tinel's test[3] positive, Plaintiff had no restriction in range of motion of the shoulder, elbow, wrist and finger/thumb joints, normal grip, and no difficulty with turning a doorknob, tying a pair of shoes, manipulating a button, and picking up a coin with either hand.  Tr. 29-30.  Other positive and negative tests are reflected in the record, including in Dr. Staley's assessment which commented that Dr. Drenguis'

_____

[3] Tinel's sign is a test used by physicians to produce the symptoms of carpal tunnel: "a sensation of tingling, or of 'pins and needles,' felt at the lesion site or more distally along the course of a nerve when the latter is percussed; indicates a partial lesion or early regeneration in the nerve."  Stedmans Medical Dictionary § 820740.

examination revealed negative Phalen's[4] and reverse Phalen's tests bilaterally.  Tr. 120.  Other tests results reflect a positive Phalen's test bilaterally, and a negative Tinel's test in the right hand.  Tr. 462.

The undersigned finds no error in the ALJ's conclusion there were both positive and negative clinical findings.  Furthermore, the Court finds the ALJ did not ignore Plaintiff's positive findings, though he did not explicitly discuss them all, such as decreased sensation and abnormal motor strength.  Tr. 332, 447.  In forming his opinion, Dr. Drenguis reviewed only a single clinic note in addition to the SSA form 3368 and a function report.  Tr. 348.  After Dr. Drenguis' examination, despite lack of treatment, Plaintiff returned to work.  Tr. 348.  The overall record of both positive and normal findings, lack of treatment yet return to work, supports the ALJ's conclusion that the overall treatment record was inconsistent with Dr. Drenguis' manipulative restriction.  This was a specific and legitimate reason supported by substantial evidence.

---

[4] Phalen's maneuver is done by pushing the back of the hands together for one minute.  Paresthesia may indicate carpal tunnel syndrome.  Stedmans Medical Dictionary § 526130.

### c. Inconsistency with Nonexamining Opinion and Activities

Third, the ALJ accorded Dr. Drenguis' opinion less weight because he did not review the overall record, as did Dr. Staley, whom the ALJ accorded significant weight. Tr. 31. The Court rejects Plaintiff's contention that Dr. Staley's opinion was not a reason offered by the ALJ in rejection of Dr. Drenguis' opinion. ECF No. 17 at 3.

Generally, an ALJ should accord more weight to the opinion of an examining physician than to that of a non-examining physician. *See Andrews v. Shalala*, 53 F.3d 1035, 1040–41 (9th Cir. 1995). However, the opinion of a nonexamining physician may serve as substantial evidence if it is "supported by other evidence in the record and [is] consistent with it." *Id*. at 1041. The ALJ found Dr. Staley's opinion consistent with the objective medical evidence (which evidenced both positive and negative findings as discussed above), Plaintiff's activities of daily living, and Plaintiff's ability to work. Tr. 30.

In regards to daily activities, the ALJ found that Dr. Staley's opinion was supported by his consistent findings that Plaintiff "worked on his computer, was fully independent in self-care and household chores, and worked part-time as a home health aide." Tr. 30. The regulations provide that an ALJ generally will give more weight to a medical opinion that is "consistent ... with the record as a whole." 20 C.F.R. § 404.1527(c)(5). Moreover, an ALJ may discount a medical

source opinion to the extent it conflicts with the claimant's daily activities. *Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 601-02 (9th Cir. 1999).  The ALJ further found that Plaintiff's pain and numbness did not preclude him from also driving, grocery shopping, mowing the lawn, using a computer keyboard, and playing cards.  Tr. 26, 29, 30.  As Dr. Staley's opinion is supported by other evidence in the record, including Plaintiff's self-reported activities, the ALJ reasonably accorded more weight to this opinion.

Additionally, the ALJ concluded that Dr. Staley's opined manipulative limitations were consistent with Plaintiff's ability to work and work history. Working with an impairment supports a conclusion that the impairment is not disabling.  *See Drouin v. Sullivan*, 966 F.2d 1255, 1258 (9th Cir. 1992).  Plaintiff performed substantial gainful activity from 2000 through 2010.  Tr. 24; *see also* Tr. 31 (noting Plaintiff reported he worked from August 1978 to September 2010 as a manager at a fast food restaurant).  Plaintiff requested a closed period of disability from September 2010, when he stopped working as a manager of fast food restaurant, Tr. 29, to April 2014, the time he successfully returned to substantial gainful activity working two jobs as a merchandiser and licensed caregiver for his mother.  Tr. 23.  Plaintiff's treatment records evidence longstanding symptoms of carpal tunnel syndrome.  Tr. 452 (May 2014: Plaintiff reports nerve conduction studies performed 25 years ago); Tr. 461 (Sept. 2014:

describing onset as 20 years ago).  The ALJ found consistent and persuasive the following other evidence favoring Dr. Staley's interpretation of the record as a whole: 1) Plaintiff had worked full-time with the allegedly disabling impairment both before and after the closed period of alleged disability under review; 2) there was no evidence of worsening to the extent it prevented his return to work in April 2014; and 3) Plaintiff stopped working at as a fast food manager for reasons other than his impairments.  Tr. 29.

Plaintiff contends this evidence of work ethic should have little bearing on the analysis of the period under review.  ECF No. 17 at 9-10.  However, courts have routinely upheld this exact type of evidence as adequate reason to reject allegations of disabling symptoms and limitations.  *See, e.g.*, *Bray*, 554 F.3d at 1227 (upholding ALJ's adverse credibility determination in part because the claimant "recently worked as a personal caregiver for two years, and has sought out other employment since then"); *Gregory v. Bowen*, 844 F.2d 664, 667 (9th Cir. 1988) (finding that substantial evidence supported determination that claimant's back problems were not disabling where her condition remained constant for several years and the impairment had not prevented her from working during that time); *Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001) (sufficient reasons for disregarding subjective testimony include stopping work for nonmedical reasons and failure to seek care for allegedly disabling condition at the time

claimant stopped work); *Vasquez v. Colvin*, 2015 WL 5882891, *4 (C.D. Cal. Oct. 7, 2015) (substantial evidence supported ALJ's determination Plaintiff's symptoms did not prevent him from work, given Plaintiff's impairments were present at the same level of severity that they had been when Plaintiff had worked and Plaintiff returned to work); *Plotts v. Astrue*, 2009 WL 507486, *5 (D. Or. Feb. 26, 2009) (the absence of worsening medical findings at the alleged date of onset, the absence of improving medical findings when she returned to work, the nonmedical reasons for stopping work, and failure to seek care at the time work stopped, provided clear and convincing reasons to reject Plaintiff's statements).

The Court concludes the ALJ properly relied upon Dr. Staley's opinion along with the other consistent evidence of Plaintiff's work history, the reason for stopping work, the lack of medical evidence of deterioration, and successful return to work. Substantial evidence supports ALJ's rejection of Dr. Drenguis' opinion and finding that Plaintiff's manipulative limitations are not so severe so as to preclude his engaging in substantial gainful activity. *See Warzecha v. Berryhill*, 692 Fed.Appx. 859, 859-60 (9th Cir. June 28, 2017) (citing cases and relying upon opinion of nonexamining medical consultant supported by claimant's actual work history and lack of objective medical evidence to reject opinion of examining physician).

Accordingly, Dr. Staley's contradicting opinion was a specific and legitimate reason to reject Dr. Drenguis' opinion regarding manipulative limitations.

### 2. *Exertional Limitations*

Plaintiff also challenges the ALJ's rejection of Dr. Drenguis' opinion Plaintiff could only sit for four hours and could stand or walk for about four hours. ECF No. 15 at 8-9. Because Dr. Drenguis' exertional limitations were contradicted by the opinions of Dr. Staley, Tr. 118-19, and Dr. Rubio, Tr. 95-96, the ALJ was required to provide specific and legitimate reasons for rejecting the opinion. *Bayliss*, 427 F.3d at 1216.

First, the ALJ rejected Dr. Drenguis' exertional limitations because it was "not entirely consistent" with Dr. Drenguis' examination findings. Tr. 31. An ALJ may reject opinions that are internally inconsistent. *Nguyen*, 100 F.3d at 1464. An ALJ is not obliged to credit medical opinions that are unsupported by the medical source's own data. *Tommasetti*, 533 F.3d at 1041. The ALJ found Dr. Drenguis' abnormal gait testing was "largely due to transient gout symptoms in the left ankle, not a back impairment." Tr. 31 (citing Tr. 351-52) (noting Plaintiff was favoring his left ankle and diagnosing "gout with findings of inflammation of his left ankle today."). Plaintiff's contention that the ALJ incorrectly attributed gait abnormalities "solely" to gout is unsupported. ECF No. 17 at 2. The ALJ also noted Dr. Drenguis' examination findings that: Plaintiff had normal muscle

strength, Tr. 31 (citing Tr. 352); he was observed to walk from the parking lot to the waiting room (20 feet) without assistance; Tr. 28 (citing Tr. 350); he did not need an assistive device, Tr. 24 (citing Tr. 351); straight leg raising tests were negative, Tr. 28 (citing Tr. 351); with percussion and palpation, Plaintiff's lumbar spine "proved to be only mildly tender," Tr. 28 (citing Tr. 351); and Plaintiff's right knee was mildly tender, but stable with normal range of motion. Tr. 24 (citing Tr. 351).

Second, the ALJ found Dr. Drenguis' opinion inconsistent with "most" of the treatment notes which the ALJ found "do not show that the claimant had an abnormal gait due to a back impairment" or "difficulty sitting." Tr. 31 (generally referring to family medicine office treatment notes at Tr. 339-47, 370-87, 430-64). An ALJ may discredit physicians' opinions that are unsupported by the record as a whole. *Batson*, 359 F.3d at 1195. Moreover, the extent to which a medical source is "familiar with the other information in [the claimant's] case record" is relevant in assessing the weight of that source's medical opinion. *See* 20 C.F.R. § 416.927(c)(6). Plaintiff simply disagrees with the ALJ's interpretation of the evidence. ECF No. 15 at 8. To the extent the evidence could be interpreted differently, it is the role of the ALJ to resolve conflicts and ambiguity in the evidence. *See Morgan*, 169 F.3d at 599-600. Where evidence is subject to more than one rational interpretation, the ALJ's conclusion will be upheld. *Burch*, 400

F.3d at 679. The Court will only disturb the ALJ's findings if they are not supported by substantial evidence. *Hill*, 698 F.3d at 1158.

Finally, as discussed *supra*, the ALJ properly concluded the opinions of Dr. Staley and Dr. Rubio, along with other consistent evidence in the record, constitutes substantial evidence to reject Dr. Drenguis' exertional limitations. Tr. 30. The consistent other evidence includes Plaintiff's extensive medium exertion work history, reason for stopping work, lack of evidence of worsening during the period under review, and return to substantial gainful activity. As explained above, working with an impairment supports a conclusion that the impairment is not disabling. *See Drouin*, 966 F.2d at 1258; *Bray*, 554 F.3d at 1227 (upholding ALJ's adverse credibility determination in part because the claimant "recently worked as a personal caregiver for two years, and has sought out other employment since then"). This was a specific and legitimate reason to reject Dr. Drenguis' opinion regarding Plaintiff's exertional limitations.

**B. Lay Evidence**

Plaintiff challenges the ALJ's treatment of statements provided by Sherri Richmond, Plaintiff's sister. ECF No. 15 at 9-12.

An ALJ must consider the statements of lay witnesses in determining whether a claimant is disabled. *Stout*, 454 F.3d at 1053. Lay witness evidence cannot establish the existence of medically determinable impairments, but lay

witness evidence is "competent evidence" as to "how an impairment affects [a claimant's] ability to work." *Id*.; 20 C.F.R. § 416.913; *see also Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993) ("[F]riends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to her condition."). If lay witness statements are rejected, the ALJ "'must give reasons that are germane to each witness.'" *Nguyen*, 100 F.3d at 1467 (9th Cir. 1996) (citing *Dodrill*, 12 F.3d at 919).

The ALJ summarized Ms. Richmond's Third Party Function Report, Tr. 292-99, generally describing Plaintiff's symptoms including back pain and numbness in his hands. Tr. 30. Ms. Richmond also described how Plaintiff cares for his mother, performs chores, drives, handles finances, uses a computer, and plays cards. Tr. 30. The ALJ found Ms. Richmond's statements regarding Plaintiff's activities "generally credible," but did not alter the RFC due to his activities. Inconsistency with a claimant's daily activities is a germane reason to reject lay testimony. *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1163-64 (9th Cir. 2008).

Plaintiff contends Ms. Richmond's statements, if accepted as true, would demonstrate Plaintiff is disabled because "a person who must frequently stop what he is doing to shake out his hands is unlikely to be able to do manipulative tasks on more than an occasional basis." ECF No. 15 at 11. However, Plaintiff's

contention goes beyond the scope of the lay witness testimony and does not find support in the medical evidence in the record. Ms. Richmond indicated that when Plaintiff uses the computer or is playing cards, "he will stop and shake hands" to try to alleviate numbness. Tr. 296, 299. Ms. Richmond did not describe any frequency or degree of interruption caused by the need to shake Plaintiff's hands. In fact, Plaintiff testified at the hearing that with a regular 10-minute break, he could probably work four to five hours. Tr. 59. Plaintiff has not identified any error in the ALJ's evaluation of the lay evidence.

**C. Plaintiff's Symptom Claims**

Plaintiff's contends the ALJ failed to rely upon clear and convincing reasons in discrediting his symptom claims. ECF No. 15 at 13-19.

An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (internal quotation marks omitted). "The claimant is not required to show that [his] impairment could reasonably be expected to cause the severity of the symptom [he] has alleged; [he] need only

show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* (quoting *Lester*, 81 F.3d at 834 (9th Cir. 1995); *Thomas*, 278 F.3d at 958 ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

In assessing Plaintiff's symptom claims, the ALJ may consider, *inter alia*, (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between his testimony and his conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and (5) testimony from physicians or

third parties concerning the nature, severity, and effect of the claimant's condition. *Thomas*, 278 F.3d at 958-59.

The ALJ found that Plaintiff's medically determinable impairments could cause Plaintiff's alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely credible. Tr. 28. The Court concludes the ALJ provided specific, clear, and convincing reasons to support this finding.

### 1. Lack of Objective Medical Evidence

First, the ALJ found the Plaintiff's allegations "are not entirely consistent with the medical evidence of record." Tr. 28. An ALJ may not discredit a claimant's symptom testimony and deny benefits solely because the degree of the symptoms alleged is not supported by objective medical evidence. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989). However, the medical evidence is a relevant factor in determining the severity of a claimant's pain and its disabling effects. *Rollins*, 261 F.3d at 857; 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2). Minimal objective evidence is a factor which may be relied upon in discrediting a claimant's testimony, although it may not be the only factor. *See Burch*, 400 F.3d at 680.

Regarding the medical evidence of back-related symptoms, the ALJ noted that though Plaintiff reported back pain, there were "few abnormal clinical findings pertaining to back pain during the relevant period." Tr. 28. The ALJ relied on objective evidence, for example, lumbar spine imaging showed moderate degenerative disease, mild spondylosis without acute abnormality, and no instability. Tr. 28 (citing 355, 400). The ALJ also noted that upon examination, Plaintiff had normal strength in his lower extremities, a negative straight leg raising test, mild tenderness with percussion and palpation, and no paravertebral muscle spasms. Tr. 28 (citing Tr. 351-52). The ALJ also noted that at his doctor visit on March 5, 2015, back pain was not listed as a chief complaint, though he obtained a prescription for nine tablets of 7.5 mg hydrocodone/325 mgacetaminophen for his back pain. Tr. 28 (citing 438). Moreover, Plaintiff's hypertension, hyperlipidemia, and diabetes, were monitored, but his treatment reflected good control. Tr. 29. Regarding Plaintiff's carpal tunnel-related symptoms, the ALJ found the medical evidence again showed both positive and normal clinical findings. Tr. 29; *see discussion supra, § A*. For example, Dr. Drenguis found Tinel's test positive bilaterally, but Plaintiff had normal range of motion in the upper extremity joints and no difficulty performing manipulative activities on examination. Tr. 29 (citing Tr. 350-51).

The inconsistent medical evidence, coupled with the other reasons cited by the ALJ, provided clear and convincing reasons to discredit Plaintiff's symptom claims.

### 2. Inconsistent with Functioning / Daily Activities

Next, the ALJ found activities performed by Plaintiff further belie the alleged symptom and limitation severity. Tr. 29. Evidence about daily activities is properly considered in evaluating symptom claims. *Fair*, 885 F.2d at 603. However, a claimant need not be utterly incapacitated in order to be eligible for benefits. *See Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) ("[T]he mere fact that a plaintiff has carried on certain activities ... does not in any way detract from her credibility as to her overall disability."). However, as in this case, "[e]ven where [Plaintiff's daily] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113.

Here, the ALJ cited, for example, Plaintiff's reports that after alleged disability onset, he continued caring for his elderly mother, which would "require standing and walking to help the person with daily needs," Tr. 28, such as laundry, bathing, dispensing medications, and paying bills. Tr. 23, 25. Plaintiff's Function Report form also indicated that he drives a car, shops for groceries, pays bills, and maintains a checking account. Tr. 25. Despite his claims of disabling carpal

tunnel symptoms, the ALJ noted Plaintiff's "usual daily activities" included using a computer, doing laundry, and mowing the lawn. Tr. 29. The range of activities Plaintiff remained capable of provided a clear and convincing reason to discount Plaintiff's symptom claims.

### 3. Reason for Stopping Work

In addition, the ALJ noted Plaintiff stopped working as a restaurant manager due to reasons other than his impairments. Tr. 29. When considering a claimant's contention that he cannot work because of his impairments, it is appropriate to consider whether the claimant has not worked for reasons unrelated to his alleged disability. *See Tommasetti*, 533 F.3d at 1040; *Bruton*, 268 F.3d at 828 (sufficient reasons for disregarding subjective testimony include stopping work for nonmedical reasons and failure to seek care for allegedly disabling condition at the time claimant stopped work). Plaintiff indicated his last job as a manager of a restaurant ended because he lost two bank deposits. Tr. 29 (citing Tr. 357). The reason for stopping work cuts against Plaintiff's claim his current pain and other symptoms suddenly made it impossible for him to work at all. The ALJ permissibly relied upon this reason to discredit Plaintiff's symptom claims.

### 4. Ability to Work with Impairments

Next, the ALJ cited evidence that both before and after the alleged onset date, Plaintiff was able to work at substantial gainful activity levels. Tr. 29. As

discussed above, working with an impairment supports a conclusion that the impairment is not disabling. *See Drouin*, 966 F.2d at 1258; *Bray*, 554 F.3d at 1227 (upholding ALJ's adverse credibility determination in part because the claimant "recently worked as a personal caregiver for two years, and has sought out other employment since then"); *Gregory*, 844 F.2d at 667 (finding that substantial evidence supported determination that claimant's back problems were not disabling where her condition remained constant for several years and the impairment had not prevented her from working during that time). The record reflects Plaintiff has experienced symptoms of carpal tunnel while working for many years as a manager of a fast food restaurant. Tr. 452, 461. As noted by the ALJ, "even though [Plaintiff] has notable symptoms, particularly in his hands, they did not stop him from working prior to September 2010 (his initial alleged disability onset date)." Tr. 29.

In addition, the ALJ noted that during the period in question, Plaintiff was paid to care for his elderly mother and then returned to full-time work in April 2014. Tr. 23, 29. The ALJ found this ability to work "suggests that his complaints of limitations so severe that he could not work were not wholly credible." Tr. 29. Evidence of Plaintiff's return to work was properly considered. *See Vasquez*, 2015 WL 5882891, *4 (C.D. Cal. Oct. 7, 2015) (substantial evidence supported ALJ's determination Plaintiff's symptoms did not prevent him from work, given

Plaintiff's impairments were present at the same level of severity that they had been when Plaintiff had worked and Plaintiff returned to work); *Plotts*, 2009 WL 507486, *5 (D. Or. Feb. 26, 2009) (the absence of worsening medical findings at the alleged date of onset, the absence of improving medical findings when she returned to work, the nonmedical reasons for stopping work, and failure to seek care at the time work stopped, provided clear and convincing reasons to reject Plaintiff's statements). Plaintiff's ability work, along with the other reasons cited by the ALJ, was a clear and convincing reason to discount Plaintiff's symptom claims.

In sum, the ALJ provided several clear and convincing reasons, supported by substantial evidence, for discounting Plaintiff's symptom claims.

**D. Past Relevant Work**

Plaintiff contends the ALJ erred at step four by improperly considered Plaintiff's work as a pamphlet distributor as past relevant work. ECF No. 15 at 12-13. The Court need not address this claim. Even assuming that the ALJ erred, the error was harmless because the ALJ also found Plaintiff capable of performing his past relevant work as a fast food manager and because of the ALJ's alternative step five finding that there were other jobs which existed in the national economy that Plaintiff could perform. *See, e.g.*, *Berry v. Colvin*, 657 Fed.Appx. 650, 651-52 (9th Cir. 2016).

1    The ALJ's step four and step five findings are supported by substantial

2  evidence.

3                                    **CONCLUSION**

4    After review, the Court finds that the ALJ's decision is supported by

5  substantial evidence and free of harmful error.  **IT IS ORDERED**:

6    1. Plaintiff's Motion for Summary Judgment, **ECF No. 15**, is **DENIED**.

7    2. Defendant's Motion for Summary Judgment, **ECF No. 16,** is

8  **GRANTED**.

9    The District Court Executive is directed to file this Order, enter

10  **JUDGMENT FOR THE DEFENDANT,** provide copies to counsel, and **CLOSE**

11  **THE FILE.**

12    DATED September 4, 2018.

13                              _s/Mary K. Dimke_
                              MARY K. DIMKE
14                    UNITED STATES MAGISTRATE JUDGE

ORDER - 32